UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

ANTHONY WHITT,

                              Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　　Case # 17-CV-673-FPG

                                                                                     DECISION AND ORDER

BUFFALO TRANSPORTATION INC.,

                              Defendant.

## INTRODUCTION

*Pro se* Plaintiff Anthony Whitt brings this action for racial discrimination and retaliation against Defendant Buffalo Transportation Inc. pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. *See* ECF No. 9. Plaintiff filed his initial Complaint on July 20, 2017. ECF No. 1. On August 1, 2017, Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 3. The Court granted Defendant's Motion to Dismiss, but afforded Plaintiff thirty days to file an Amended Complaint. *See* ECF No. 8. On January 30, 2018, Plaintiff timely filed his Amended Complaint. *See* ECF No. 9. Shortly thereafter, on February 5, 2018, Defendant filed a new Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6). ECF No. 10. For the reasons that follow, Defendant's Motion is GRANTED, and Plaintiff's Amended Complaint (ECF No. 9) is DISMISSED WITH PREJUDICE.

# BACKGROUND[1]

Plaintiff worked for Defendant on an at-will basis as a "wheelchair driver" from November 11, 2015 to September 26, 2016. ECF No. 11, at 5. He takes issue with three incidents that occurred during his employment: First, on August 14, 2016, Plaintiff was asked to complete a pick-up during his lunch break, which he refused to do. Plaintiff declined repeated requests to take his lunch break later, and—upon discussion with his supervisor and Defendant's owner—returned the keys and company vehicle without completing the pick-up. The next day, Plaintiff was informed that the exchange had been a "misunderstanding," and that he was still employed. ECF No. 9, at 2.

Second, on September 14, 2016, Plaintiff received an "[e]mployment packet" describing a partnership between Defendant and Cornerstone, an employment company. *Id.* at 3. He learned that he would become a "leased-out[,] [a]t-will employee of Cornerstone," and he received a new rulebook. *Id.* Plaintiff took issue with the new rulebook's lack of revision and failure to include "key elements of NYS Labor Law Discrimination Rights," along with "any sign of a contract between employer and employee." *Id.* Accordingly, Plaintiff "refused to sign th[e] new employment packet/contract." *Id.*

Third, on September 23, 2016, an administrator with Defendant called Plaintiff to inform him that he would be switched to the morning shift. Plaintiff explained that he was unable to accommodate that change because he watched his child in the morning, and the administrator

---

[1] All facts are drawn from Plaintiff's Amended Complaint (ECF No. 9) and Reply to Defendant's Motion to Dismiss (ECF No. 11). *See, e.g.*, *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (instructing that a district court may consider facts included in a *pro se* party's opposition papers in deciding a motion to dismiss). The Amended Complaint contains a near-verbatim recitation of the facts from the Complaint (ECF No. 1), which this Court summarized in its previous Decision and Order (ECF No. 8). Accordingly, much of the Court's factual summary remains the same.

directed him to speak with Defendant's owner. *Id.* On September 26, 2016, Defendant's owner terminated Plaintiff's employment, citing Plaintiff's inability to work the morning shift. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) instructs that a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court clarified the requirements of Rule 8(a)(2) for "all civil actions." *Iqbal*, 556 U.S. at 684. To be sufficient, a pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). In that vein, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly*, 550 U.S. at 555). Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id.* (quoting *Twombly*, 550 U.S. at 570). That measure of plausibility requires "more than a sheer possibility that a defendant has acted unlawfully"—the pleaded facts must permit a "reasonable inference" of liability for the alleged misconduct. *Id.*; *see also Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (instructing that "all reasonable inferences" are to be taken in the plaintiff's favor).

While a *pro se* plaintiff's complaint remains subject to Rule 8(a)(2)'s requirements, it is entitled to "special solicitude," requiring a court to "interpret[] the complaint to raise the 'strongest claims that it suggests.' " *See, e.g.*, *Williams v. Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting the "obligat[ion] to construe a *pro se* complaint liberally"). Beyond the facts alleged in a *pro se* plaintiff's complaint, a court may also consider "documents attached to the

complaint as exhibits[] and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), along with "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *e.g.*, *Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Alsaifullah v. Furco*, No. 12 Civ. 2907(ER), 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013)); *see also Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (instructing that a district court may consider facts included in a *pro se* party's opposition papers in deciding a motion to dismiss).

## DISCUSSION

### I. Amended Claims

With respect to his § 1983 claim, Plaintiff continues to advance the same arguments that the Court rejected in dismissing his original Complaint. *See, e.g.*, ECF No. 9, at 1 ("[Defendant], is a Privately held Company, Incorporated in The State of New York. A ' PERSON ', given the right to employ and collect State and Federal wage tax, which makes [Defendant] a ' State Actor ' . . . ."). For the same reasons provided in its previous Decision and Order, the Court once again finds no merit in Plaintiff's contention that Defendant's incorporation under New York law renders it a state actor for purposes of § 1983. *See* ECF No. 8, at 4; *see also, e.g.*, *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312–13 (2d Cir. 2003). As a result, Plaintiff's § 1983 claim is dismissed.

Plaintiff also fails to correct the deficiencies in his Title VII claims. As the Court explained in its prior Decision and Order, "[t]o avoid dismissal of his discrimination claims, Plaintiff 'must plausibly allege that (1) [Defendant] took adverse action against him, and (2) his race . . . was a motivating factor in the employment decision." ECF No. 8, at 5 (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015)) (alteration in original). Although Plaintiff now states that he is "Native American/African American," ECF No. 11, at 2, he fails to assert any facts

suggesting discrimination on that basis,[2] nor does he point to any adverse action taken by Defendant. At most, Plaintiff claims that Defendant threatened potential termination, but he remained employed after both episodes—accordingly, neither threat constitutes an adverse employment action.[3] *See, e.g.*, *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 407 (S.D.N.Y. 2014) ("The law in this Circuit is clear that the threat of disciplinary action, without more, does not constitute an adverse employment action."); *see also Mitchell v. SUNY Upstate Med. Univ.*, 243 F. Supp. 3d 255, 281–82 (N.D.N.Y. 2017). Even with due consideration for Plaintiff's *pro se* status, his discrimination claims are insufficient to survive dismissal.

For his retaliation claim, as the Court previously instructed, Plaintiff "must plausibly allege that: (1) [D]efendant[] discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice" under Title VII. *See* ECF No. 8, at 5 (quoting *Vega*, 801 F.3d at 90). Once again, Plaintiff simply offers the conclusion that Defendant "abruptly Terminated [him] and placed [him] in an [sic] FINANCIAL BIND in retaliation . . . for opposing Unlawful Employment Practices/Policies Undertaken." ECF No. 9, at 4. Plaintiff fails to articulate any facts to suggest that he opposed a perceived violation of Title VII prior to his termination. As the Court explained in its prior Decision and Order, Plaintiff still does not claim that his refusal to sign his "employment packet/contract" was in opposition to an alleged Title VII

---

[2] The only race-related facts alleged pertain to the purported composition of Defendant's workforce, which Plaintiff claims "is made up of like 90% Minorities and 10% Caucasians." *See* ECF No. 9, at 4. Plaintiff characterizes Defendant as a " 'REVOLVING DOOR ' of Employment for Minorities," and he maintains that, "being that their ' HIRE/FIRE ' Rate is that of 70%[,] you see a person ' HERE TODAY-GONE TOMORROW.' " *Id.* To the extent that Plaintiff is attempting to rely solely on pleading a sort of pattern-or-practice theory of disparate treatment, such an approach is unavailing—it cannot supplant Plaintiff's pleading requirements as a private, nonclass plaintiff. *See Chin v. Port Auth. of N.Y. and N.J.*, 685 F.3d 135, 149–50 (2d Cir. 2012).

[3] In his Amended Complaint, Plaintiff also describes the lunch-break and employment-packet incidents as "opposing" purportedly unlawful practices. ECF No. 9, at 3. Even if Plaintiff intended to plead these as retaliation claims, the lack of any adverse action would still prove fatal. *See, e.g.*, *Turley v. ISG Lackawanna, Inc.*, 803 F. Supp. 2d 217, 254 (W.D.N.Y. 2011) (instructing that, for Title VII retaliation claims, "threats of termination . . . do not qualify as adverse actions where they were never carried through").

violation, *see* ECF No. 8, at 5—instead, his Amended Complaint makes clear that he "opposed the Unlawful Employment Practice/Policy of being an [sic] Leased-Out-At-Will Employee," ECF No. 9, at 3. Accordingly, like his discrimination claims, Plaintiff's Title VII retaliation claim must be dismissed.

## II. Additional Materials in Opposition Papers

In his opposition papers, Plaintiff apparently seeks to introduce a new retaliation claim and additional factual support for his original retaliation and § 1983 claims. The Court advises Plaintiff that opposition papers are not the proper vehicle to advance new allegations and claims. *See, e.g.*, *Gonzalez-Blanco v. Police Dep't of Greenburgh*, No. 13-cv-8708 (NSR), 2015 WL 3490738, at *3 (S.D.N.Y. June 1, 2015). Nevertheless, even if they had been properly set forth, Plaintiff's additional allegations and new retaliation claim would not save his Amended Complaint.

Plaintiff's opposition papers set forth a new theory of state action for the original § 1983 claim: Plaintiff now maintains that Defendant "must be in cahoots with" the New York State Department of Labor, "a State Co-conspirator to [Defendant], who mishandled The Plaintiffs [sic] investigation purposely." ECF No. 11, at 1, 6. To successfully advance a § 1983 conspiracy theory, a plaintiff may not assert "[a] merely conclusory allegation that a private entity acted in concert with a state actor." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). Plaintiff's allegation sets forth no actual facts—citing only "Plaint[iff's] belief" of a conspiracy, ECF No. 11, at 6—rendering it entirely conclusory and insufficient to salvage Plaintiff's § 1983 claim.

In support of his original claim of retaliatory termination, Plaintiff now references a complaint filed with the New York State Department of Labor. *See* ECF No. 11, at 2, 12–13. Plaintiff alleges that he filed the complaint "Days Prior to [his] Firing | The Plaintiff 'FORESEEN 'his Termination 'BEFOREHAND.' " *Id.* at 2. However, the information Plaintiff provided in his

complaint related to work periods, wages, and the like—not his race or any alleged discrimination. *See* ECF No. 11, at 12–13. Accordingly, even if the New York State Department of Labor complaint was actually filed prior to Plaintiff's termination, and even if Defendant were aware of the filing, it would not constitute protected activity for purposes of Title VII retaliation. *See* 42 U.S.C. § 2000e-3(a) (specifying that retaliation is unlawful under Title VII where it is in response to "any practice made an unlawful employment practice *by this subchapter*" (emphasis added)); *see also, e.g.*, *Male v. Tops Markets, LLC*, No. 08-CV-6234, 2010 WL 4319769, at *2 (W.D.N.Y. Oct. 29, 2010); *Jones v. Kroger Co.*, No. 1:07-CV-0696-CAP-AJB, 2008 WL 11333378, at *14 n.28 (N.D. Ga. May 9, 2008), *adopted*, 2008 WL 11336366 (N.D. Ga. July 8, 2008).

Plaintiff also advances a new, post-termination retaliation claim, asserting that Defendant "notified Unemployment That the Plaintiff HAD quit and then Challenged the Plaintiff's Unemployment Benefits ' Tooth and Nail ' only to Fail after numerous of Challenges[] . . . . Blatantly placing the Plaintiff through a financial crisis purposely." ECF No. 11, at 3. But this claim suffers from the same defect as Plaintiff's original retaliation claim—it fails to set forth facts suggesting any prior opposition to a perceived violation of Title VII. Therefore, even if the Court considered this claim, it would not withstand dismissal.

### III. Leave to Amend

The Court recognizes that "[a] *pro se* complaint 'should not [be] dismiss[ed] without [the Court's] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Grullon v. City of New Haven*, 720 F.3d 133, 139–40 (2d Cir. 2013) (quoting *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010)) (alterations in original). However, the Court has already granted that opportunity—moreover, a court may deny further leave to amend where amendment "would be 'futil[e].' " *Id.* at 140 (quoting *Foman v.*

*Davis*, 371 U.S. 178, 182 (1962)) (alteration in original). Given the repeated deficiencies in Plaintiff's claims, the Court dismisses Plaintiff's Amended Complaint without granting additional leave to amend.

## CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (ECF No. 10) is GRANTED, and Plaintiff's Amended Complaint (ECF No. 9) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: May 2, 2018
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court